IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADRIANNA C. RENFER, | : | No. 3:14cv611 |
|     Plaintiff | : | |
| v. | : | (Judge Munley) |
| | : | |
| CAROLYN W. COLVIN, Acting | : | |
| Social Security Commissioner, | : | |
|     Defendant | : | |

**MEMORANDUM**

Before the court for disposition is Plaintiff Adrianna C. Renfer's appeal from a final administrative decision of the Social Security Commissioner denying her claim for Title II social security disability and supplemental security income benefits.[1] The parties have briefed their respective positions and the matter is ripe for disposition.

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. 42 U.S.C. §§ 415(a) and 416(i)(1). The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." See 42 U.S.C. § 416(i)(2).

    Supplemental security income (hereinafter "SSI") is a federal income supplement program funded by general tax revenues (not social security taxes). 42 U.S.C. § 1381. It is designed to help the aged, blind or disabled individuals who have little or no income. 42 U.S.C. § 1381a. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. 42 U.S.C. § 1382.

**Background**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on October 28, 2010.[2] (R. at 12).[3] Plaintiff claimed disability beginning on January 30, 2010 due to bipolar disorder. (R. at 12, 14). She had worked for approximately thirty (30) years as a registered nurse before the alleged onset of her disability.

The Bureau of Disability Determination of the local Social Security office initially denied plaintiff's claim for benefits on April 6, 2011. (R. at 59). Plaintiff then requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). (R. at 65-66). ALJ Michele Wolfe held a hearing on June 28, 2012 in Wilkes-Barre, Pennsylvania. (R. at 26-56, Transcript of hearing). An impartial vocational expert, Michelle C. Giorgio appeared at the hearing, as did the plaintiff. (Id.)

On August 28, 2012, the ALJ issued a decision denying the

---

[2] "Protective filing" is a term describing the first time an individual contacts the Social Security Administration to file a claim for benefits. See 20 C.F.R. § 416.340; see also SOC. SEC. ADMIN. PROGRAM OPERATIONS MANUEL SYS., GN 00204.010. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed. 20 C.F.R. § 416.340.

[3] References to "R. at ___" are to pages of the administrative record filed by the defendant on January 12, 2015.

application for disability and disability insurance benefits on the basis that plaintiff is not disabled under the Social Security Act. (R. at 12-20).

Plaintiff then filed for review before the Social Security Administration Office of Disability Adjudication and Review Appeals Council. (R. at 7). The Appeals Council denied the request for review on February 7, 2014. (R. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security in plaintiff's case. (R. at 1). Subsequently, plaintiff instituted the instant action to challenge the denial of benefits. (Doc. 1, Compl.). She argues that the ALJ's decision is not supported by substantial evidence. The matter has been fully briefed and is ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of

Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In reviewing a Social Security appeal, this court must determine whether "substantial evidence" supports the ALJ's decision.  See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion.  See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder);  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"

Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

    **Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).  An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

6

exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and supplemental security income claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[4] (2) has an impairment, or combination of impairments, that is severe,[5] (3) has an impairment or

---

[4] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510 and 416.910. If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

[5] The determination of whether a claimant has any severe impairments that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509, 404.1520(c) and 416.920(c). If a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b).

combination of impairments that meets or equals the requirements of a "listed impairment,"[6] (4) has the "residual functional capacity" to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). As part of step four, the administrative law judge must determine the claimant's residual functional capacity.[7] 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See SSR 96-8p, 1996 WL 374184. A regular and continuing basis contemplates full-time employment and is

---

An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

[6] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990). If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[7] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

8

defined as eight hours a day, five days per week or other similar schedule. Id. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

In the instant case, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since January 30, 2010, the alleged disability onset date. (Doc. 17-2, ALJ Decision at 14). Next, she found that plaintiff has the severe impairment of bipolar disorder, 20 C.F.R. 404.1520(c). At step three, the ALJ determined that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

Prior to addressing step four, the ALJ determined that the plaintiff has the residual functional capacity (hereinafter "RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can do simple routine tasks, but no detailed or complex

tasks in a low stress environment defined as less than occasional decision-making and less than occasional changes in work setting. (R. at 15-16). Further, the ALJ determined that plaintiff can have occasional interaction with co-workers and supervisors, but no team-type setting work with co-workers. (Id. at 16). She cannot have interaction with the public, and must work with things rather than people. (Id.) Because of this RFC, the ALJ concluded that plaintiff is unable to perform her past relevant work as a registered nurse. (Id. at 18-19).

Finally, based upon the testimony of the vocational expert, and a hypothetical question that the ALJ posed to her, the ALJ concluded at step five that occupations exist in the national economy that the plaintiff can perform. (Id. at 19). These occupations include: hand packager, stock clerk/order filler, and production laborer. (Id.) Thus, the ALJ determined that the plaintiff is not disabled and is not entitled to any of the benefits that she sought. (Id. at 20).

Plaintiff's appeal raises the following two issues: 1) Did the ALJ base her decision on an incorrect interpretation of plaintiff's current psychological condition and residual functional work capacity? and 2) Did the ALJ commit error in failing to assess the effect of plaintiff's medications

on her residual functional work capacity? We will address these issues in turn.

**1. Did the ALJ base her decision on an incorrect interpretation of the Plaintiff's current psychological condition and residual functional work capacity?**

We must determine if substantial evidence supports the ALJ's conclusions. As noted above, the ALJ concluded that plaintiff possesses the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can do simple routine tasks, but no detailed or complex tasks in a low stress environment defined as less than occasional decision-making and less than occasional changes in work setting. (R. at 15-16). Further, the ALJ determined that plaintiff can have occasional interaction with co-workers and supervisors, but no team-type setting work with co-workers. (R. at 16). She cannot have interaction with the public, and must work with things rather than people. (Id.)

To reach this conclusion the ALJ reviewed the medical evidence contained in the record. She reviewed the letter of plaintiff's treating physician, which she provided "some weight". (R. at 18). She reviewed the report of Alan Petroski, Ph.D, the consultative examining physician.

She discusses the GAF score[8] that Dr. Petroski supplied, and she gave it "no weight". (Id.) She gave no weight to the psychiatric review technique form (PRTF) and mental residual functional capacity done in 2006 because they were too distant in the past and offered at a time when plaintiff was working.[9] (Id.) She gave some weight to the findings of John Rohar, Ph.D, who performed a "Mental Residual Functional Capacity Assessment without ever examining the plaintiff in person. (Id.) Finally, the ALJ found plaintiff's statements at the hearing concerning, persistence and limiting effects of her symptoms to be not credible. (Id.) We find that substantial evidence fails to support the ALJ's conclusions.

---

[8] The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. Diagnostic and Statistical Manual of Mental Disorders 3–32 (4th ed.1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 31–40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. Dr. Petroski found plaintiff to have a current GAF score of 35 and a past score of 40. (R. at 236).

[9] This evaluation determined that plaintiff suffered from major depressive disorder and generalized anxiety disorder. (R. at 197, 199).

The treating physician diagnosed plaintiff with "Bipolar Disorder, Mixed State." (R. at 260). She has symptoms including amplified anxiety and psychomotor agitation. (Id.) He indicated that "she remains ill and will require lifetime psychiatric treatment and follow-up and will need to remain on medications, carefully adjusted, for the remainder of her life." (Id.) She currently takes six mood stabilizing medications, and she has proven challenging to treat. (Id.) Plaintiff sees the doctor in intervals ranging from one to four weeks. (Id.)[10]

---

[10]Specifically the doctor indicated:

> [S]he has continued in treatment and is seen in intervals ranging from one to four weeks depending on her clinical circumstances. Ms. Renfer has proved challenging to treat and has required combinations of medication to decrease symptoms. Her current medications include six mood stabilizers: Lithium, Equetro, Depakote-ER, Lyrica, Keppra, and Zonegran. She has also required Hydrochlorthiazide, Synthroid and Cytomel to manage side effects. A side effect that remains is a tremor of the left hand.
>
> Her diagnosis remains Bipolar Disorder, Mixed State. Though much less symptomatic, she remains with symptoms of amplified anxiety and psychomotor agitation. Although I continue to work with her to reduce symptoms, she remains ill and will require lifetime psychiatric treatment and follow-up and will need to remain on medications, carefully adjusted, for the remainder of her life.

The ALJ provided "some weight" to the plaintiff's treating physician's opinion. The ALJ erred in not providing more weight to the treating physician's conclusions. "Medical evaluations by treating physicians are entitled to significant weight, particularly if they are uncontradicted by other expert medical testimony. An ALJ is not free to set his own expertise against that of physicians who present competent medical evidence." Edge v. Schweiker, 814 F.2d 125, 129 (3d Cir. 1997). Thus, "[t]reating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)).

The ALJ provided "some weight" to the treating physician. (R. at 18). She found amongst the medical records indications that plaintiff did not take all the advice she received from her treating physician, regarding psychotherapy, avoiding caffeine and avoiding juice. An ALJ acts improperly when she discredits the opinions of a medical expert by finding them contrary to the objective medical evidence contained in the file.

---

(Doc. 17-7, at 260, June 21, 2012 Correspondence from Dr. Weisblatt).

Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).  That is precisely what the ALJ did in this case.

Likewise, the ALJ provided little to no weight to Alan Petroski, Ph.D., the consultative examining physician who examined the plaintiff.  He concluded as follows:

> [Plaintiff] has marked impairment in her ability to understand, remember, and carry out short, simple instructions.  She has extreme impairment in her ability to understand, remember and carry out detailed instructions and marked impairment in her ability to make judgments on simple, work related decisions. [Plaintiff] has moderate impairment in her ability to interact appropriately with the public and marked impairment in her ability to interact appropriately with supervisor and co-workers.  She has extreme impairment in her ability to respond appropriately to work pressures or changes in a routine work setting.

(Doc. 17-7 at 236, report of Dr. Petroski).

The ALJ disregarded this opinion because it is based on the plaintiff's own self-reported symptoms to Dr. Petroski.  The ALJ found the plaintiff not credible, and therefore, the report of the examining physician was discredited because it was based on statements from the plaintiff.  In effect, she replaced the psychologist's credibility determination with her own.

The ALJ, however, gave "some weight" to the State Agency opinions

of John Rohar, Ph.D.  Rohar never examined plaintiff, but merely reviewed the records.  He found that plaintiff is "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment."  (R. at 244).   He filled out a "Mental Residual Functional Capacity Assessment" form.  The form is in the nature of a checklist and he found plaintiff "Not Significantly Limited" or "Moderately Limited" in various functional restrictions.  (R. at 242-243).  Like the ALJ, Rohar found Dr. Petroski's conclusions unconvincing, even though Dr. Petroski actually examined the plaintiff.  (R. at 244).   It is well established that a non-examining physicians' opinions "have less probative force as a general matter, than they would have had if the doctor had treated or examined [the claimant]."  Morales v. Apfel, 225 F.3d 310, 320 (3d Cir.2000) (internal quotation marks and citation omitted); see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008) (citing Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir.1986) (". . . this Court has 'consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician.'")).  Here, the ALJ improperly provided more weight to the opinion of the non-

examining physician than to the opinion of the treating physician or the examining consultative examination physician.

As such, the ALJ discredited the treating physician, and the consultative examination physician based upon her own review of the medical documentation. Such an adjudication of the plaintiff's claim is not proper and thus substantial evidence does not support the ALJ's conclusions.

Another error the ALJ made involves her analysis of plaintiff's credibility and her daily living and social activities. She found that plaintiff only had minor restrictions in these areas. She concluded that the plaintiff can "care for her personal needs, drive, care for her pets, and perform household chores. In social functioning, the [plaintiff] has moderate difficulties. The [plaintiff] gets along with her immediate family, her cousin is her friend, and she was socially appropriate with her treating medical source." (R. at 15).

The ALJ here minimizes the plaintiff's symptoms. For example the ALJ indicates that the plaintiff can drive. The plaintiff's testimony on driving, however, was that she drives infrequently and only short distances. (R. at 39). She avoids the highway because it is too stressful for her and

17

increase her stress. (Id.) Basically, plaintiff indicated that she only drives to the grocery store and she drives her mother to doctor's appointments. (Id.) At times, she gets confused at the grocery store and forgets what she came for. (Id.)

As far as social functioning, the ALJ highlights that plaintiff "gets along" with her immediate family. She does not, however, mention that she lives with her immediate family because she had become acutely ill. (R. at 34). Moreover, she mentioned no other social functioning except for a cousin. And with regard to "household chores" plaintiff mentioned only one - she does the laundry. (R. at 40). This functioning is very minimal and does not indicate that plaintiff would be able to function in a typical work setting.

Evidently, the ALJ minimized plaintiff's symptoms because she found plaintiff less than credible. Where, however, as a claimant has worked for a long period of time, her testimony about her work capabilities should be accorded substantial credibility. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). In the instant case, the ALJ did not accord much credibility at all to the plaintiff's claim that she now is no longer able to work because of her condition although plaintiff had a long thirty (30) year work

18

history.

Based upon all the above, we find that the ALJ's conclusion is not based upon substantial evidence. We will remand the case to the Commissioner with instructions to re-evaluate the matter, including the opinions of the treating physician and the evaluating physican and the credibility of the plaintiff. The Commissioner may also collect such additional evidence and hold hearings as she finds is appropriate.

**2. The effect of plaintiff's medications on her RFC**

The second issue raised by the plaintiff is that the ALJ's RFC determination did not properly take into account the side effects that plaintiff suffers from her medicine. As noted above, plaintiff takes six mood stabilizers and her treating physician indicates that she will have to be on medicine for the remainder of her life. The ALJ's RFC did not take into consideration that the side effects of the medicine require the plaintiff to have an hour and a half before she feels fully awake. Upon remand, the ALJ should examine this information and provide an explanation for the manner in which it is utilized in determining the plaintiff's RFC.

**Conclusion**

For the above-stated reasons, the court finds that substantial

evidence does not support the Commissioner's decision.  The instant case was improperly decided based upon the ALJ's own analysis of the medical evidence and credibility determinations.  Accordingly, the case will be remanded.

**Date: May 14, 2015**               <u>**s/ James M. Munley**</u>
**Judge James M. Munley**
**UNITED STATES DISTRICT COURT**